The next case on the calendar is Tibbles v. Social Security Good morning, your honors, and may it please the court. My name is Christopher Bowes, and I'm the attorney for Nicole Renee Tibbles, the Social Security claimant in this case, challenging the final administrative decision denying our 2017 claim for benefits. Ms. Tibbles challenges the administrative law judge's finding rejecting every medical opinion in this record, which otherwise would lead to a conclusion that Ms. Tibbles is in fact disabled. Most notably is the opinion by her treating neurosurgeon who operated on, who looked at the MRI in March and April of 2018 and told her at that time that she needed an additional surgery, an anterior surgery, to correct, to extend the fusion that she previously had, and that did happen in August of 2018. Dr. Chin also performed a posterior cervical fusion in January of 2019. So he was well-equipped to understand her condition, and he provided an opinion which, if accepted, would lead to the conclusion that Ms. Tibbles is disabled, because she can't meet the sitting requirements of sedentary work, she can't meet the standing requirements of sedentary work. So Dr. Chin found her disabled. Ms. Tibbles was examined by a Social Security consultative examiner in June of 2017, just one month after her first two surgeries on the C3 and C4 discs, and that doctor offered an opinion which can only lead to the conclusion that Ms. Tibbles is disabled, at least as of that time of the examination. The doctor found muscle, left upper extremity muscle weakness of three, five in the arm, and a two out of five grip strength in the left hand. So the left upper extremity is significantly limited. Dr. Lawrenson also found that she probably could use a walker instead of a cane at that point, because her gait was so bad. That's the examination three weeks after the first surgery, right? Yes, exactly. And there is evidence of improvement after that? That's what the ALJ says. I mean, that's what the ALJ found, and there is documentary support for that. Certainly there's some improvement. Her cervical myelopathy stabilized, but the initial surgeon, Dr. Razakov, warned her that the surgery was not a cure, and that she would likely need additional surgeries in the future, such that any minimal improvement from that surgery came to an end in January of 2018, when she's seen at the Samaritan emergency room. Now she's complaining of even worse pain than before. Ten out of ten. And now it's in her right upper extremity. And this is the findings, the MRI, that leads to the conclusion that you need an extension of your cervical fusion, because of something called adjacent disc disease. What happens, I believe, is that the fused disc is solid, and that the natural forces of our bodies get extended to the adjacent disc, and here the adjacent disc was also in need of surgical correction. So the surgery is extended from the C3 through the C5, ultimately, disc. And this is in this fairly narrow period of time between May of 2017 and January of 2019. I don't call that improvement. It seems that her condition deteriorated to the point that she needed surgery. Now, where the ALJ made a mistake, we believe, is where he looked at the MRI that Dr. Chin looked at, and he said, well, this doesn't look like an MRI that could support her complaints of pain. Dr. Chin had a different opinion with respect to that. He said you need surgery. I think that the ALJ improperly treated Dr. Chin's testimony is only partially persuasive. But why is that? Why was the ALJ not entitled to look at the treating notes of Ms. Karsten and some of the other evidence that seemed inconsistent with Dr. Chin's opinion and to discount it somewhat? Well, we submit that that analysis is wrong in any event. The judge says that, okay, we see that with Dr. Lawrenson in June of 2017, her gait is completely abnormal. And he then says that come March of 2018, he sees Dr. or Nurse Practitioner Karsten. And this is Nurse Practitioner Karsten is at page 587-88. Now, keep in mind, the judge cites this to say that she's improved. When you look at the treatment note, we see Ms. Tibbles is laying, she's not sitting, she can't sit at this point. She's laying on her side on a sweater because she has extreme neck pain. There's reduced range of motion of the cervical spine. Nurse Karsten says that the muscle strength in the left upper extremity is three out of five. The dermatome distribution on the left arm is completely numb. She's complained of her whole arm being completely numb throughout this whole period. There's never been improvement with respect to that. She has said that, yes, the surgery improved my pain, but now I have headaches. And then the pain just kind of moves around. And there's no argument that she was ever obtained complete relief from pain. I would point out that Dr. Feldman, the non-examining doctor who looked at her case in June of 2017, he agreed that she was disabled as of that time. He predicted that her condition should improve over time, which that might have been the normal course of things for someone. But we know that didn't happen. By January of 2018, she's in the ER complaining of more extreme pain now to the right side. This requires additional surgical correction. A condition that continues to cause the pain that she complains of, justifiably, she has a condition which could cause the pain and numbness that she complains of. The judge dismisses that because he reads into the record saying, well, there's, what does he say? He says that there was normal strength and there was normal reflex and good range of motion. Now, this court has held that an ALJ cannot impose their sense of what absent medical findings means in the context of a complicated medical diagnosis such as cervical myelopathy. In Wagner, this court held that the judge, the administrative law judge, was not in a position to second guess the neurologist who was diagnosing hemiplegic migraines and say, well, she doesn't have this symptom, so therefore I can't accept the doctor's opinion. In Rosa, Judge Sotomayor said the same thing. The absence of muscle spasms is not a basis to discount a medical opinion. She cited the case of Balsama v. Chater, which holds the exact same premise. The administrative law judge is not in a position to understand what these, to go through the file and understand what these absent findings mean. And I would just simply point out, I have reserved time for rebuttal, but I would point out that this duty to recontact applies to, it's not bound by the treating physician rule, which doesn't apply in this case. The case of Giddings, cited in our brief, says that it also applies. The administrative law judge should recontact a consultative doctor who makes positive findings for the claimant if the judge doesn't understand what those findings mean. Thank you, Your Honor. May it please the Court. My name is Natasha Olgin, and I represent the Acting Commissioner of Social Security. I just want to start by emphasizing what's not in dispute here. There is no dispute that Ms. Tibbles had a severe cervical spine and left arm impairment. The ALJ recognized that this impairment was severe and that it required several surgeries. There is also no dispute that this impairment significantly limited her functioning. The ALJ recognized that, too, and limited her to a very narrow range of work. He limited her to less than sedentary work, which is already SSA's lowest category of exertion. He also found additional limitations beyond that, including that she needed a cane whenever she was on her feet, that she had a number of postural and environmental limitations, and importantly, he found that she could only occasionally reach overhead with her left arm, which is not her dominant arm, and also that she could only frequently use that arm and hand for other purposes. And I'll also note that there was no opinion in the record specifically saying that she was more limited in using her left arm. The main piece of evidence in the record generally indicating greater limitations was Dr. Chin's opinion, and even he didn't indicate that Ms. Tibbles was more limited in using her left arm. He only indicated that she was limited in using both arms, but he didn't differentiate between them, and he didn't say exactly what she could and couldn't do with each arm. And beyond that, I would like to emphasize that the ALJ's RFC in general is otherwise similar to Dr. Chin's assessment, and that's detailed at pages 24 to 26 of the commissioner's brief. They actually differ only as to a fairly narrow set of limitations. One is that Dr. Chin indicated that Ms. Tibbles couldn't do even the limited sitting, standing, walking, lifting requirements of sedentary work, and the other is his more specific opinion that she could only sit, stand, or walk for 30 minutes at a time before needing to lie down. Ms. Tibbles hasn't shown that the ALJ erred by not adopting these particular limitations for several reasons. First of all, the court has made it pretty clear by now that the ALJ is not required to base the RFC on any medical opinion. The regulations in SSR 96-8P say that the ALJ is supposed to base the RFC on the entire record, and in Shillow, this court said that a medical opinion can be just one of the relevant data points. And in this case, the ALJ drew from multiple data points. I'd just like to reject or disagree with counsel's statement that the ALJ rejected every medical opinion of record. That's not what happened. The ALJ instead drew from each of them and took an RFC to fairly account for each. There was, first of all, Dr. Feldman's prediction fairly early on in the record that Ms. Tibbles would be able to perform sedentary work within a year of her April 2017 diagnosis. Then there is treatment notes over the rest of 2017 showing a number of improvements over that year. Not total improvements, but her gait was improving. She was reporting less pain. Her balance was improving. There were other improvements noted throughout the treatment records. She did go to the hospital again. She went to the emergency room in January of 2018. That was reporting fairly sudden pain, but Dr. Lee, the other state agency physician, reviewed the record in February of 2018 after that visit, considered the records of that visit, and still concluded that she could perform sedentary work as of that point in time. And the ALJ considered that data point, too. That was a relevant data point, but the ALJ didn't fully rely on it because he also considered Dr. Chin's April 2000 examination, his opinion, his recommendation for more surgery, and then he considered mixed examination findings both before and after that surgery and Dr. Chin's October 2008 observation that Ms. Tibbles had a good result from that surgery. So, as in Shillow, the ALJ considered all of these data points and assessed an RFC to fairly account for all of them. Another reason why the ALJ didn't err in not adopting Dr. Chin's limitations in full is that the old treating physician rule doesn't apply to this case. So Dr. Chin's opinion was not nuddled to any special deference or even any special rule of analysis. Instead, the ALJ was only required to address two considerations as to Dr. Chin's opinion and all the other opinions in the record, which is consistency and supportability. And that's exactly what the ALJ did here. And I just want to, before I get into some examples of what the ALJ considered as to each, I'd also like to push back on the notion that the ALJ dismissed the idea that her condition could cause the symptoms she experienced or the limitations she alleged. That's not what happened. The ALJ said at several points on pages 16 and 17 of the record that her condition could possibly cause the symptoms she was alleging. The dispute is only as to the matter of degree. And the ALJ reasonably found not entirely persuasive Dr. Chin's assessment as to the degree of her limitations. So just to give a few examples as to supportability, which details how supportive Dr. Chin's opinion is by his explanation and by his own notes. For one, Dr. Chin said that Ms. Tibbles could do less than sedentary work in part because her muscle strength in both her upper and lower extremities was profoundly affected. The ALJ found this not entirely supported because even though there was evidence of left arm limitations, there was no evidence of reduced strength in either leg and also not in her right arm, despite some, there was a brief period where she experienced some symptoms there, but there were not findings of reduced strength there. And then second, even though Ms. Tibbles did show reduced strength in her left arm, which the ALJ recognized, even those findings weren't consistently abnormal. I'd like to highlight in particular that just four days before Dr. Chin signed the opinion, in April 2018, his assistant Ms. Karsten found that Ms. Tibbles had full strength and intact sensation in both the right and the left arms, and that also she had full range of motion of both the back and the neck. This is the April 26th, is it? Yes. I mean, I think the overall argument that your adversary makes is that she's, you know, Dr. Feldman is predicting she's going to get better and be able to work within a year. In fact, within a year, Dr. Chin is recommending additional surgery, and she goes through two additional surgeries, so that this is there are moments in the treating program where you can see improvement, but this is a constant cycle of recovery and surgery, so that ultimately is reflected in Dr. Chin's entire opinion that she is effectively disabled, even from sedentary work. So is there evidence in the record after the treating? Because the April, Ms. Karsten's notes predate the next surgery, right? Yes. Yes, so certainly there are fluctuations in her symptoms throughout the relevant period, and yes, Ms. Karsten's finding on that time, which was essentially right around the time of the opinion, her findings were normal on that day. That wasn't the only time, though. There were also two indications, one just before and one just after the surgery in August of 2018, where Dr. Chin's findings were normal as to the left arm. And then beyond that, even accepting that her symptoms fluctuated and that she never fully recovered, that's not the issue. The issue is not whether she fully recovered from her neck condition. The issue is whether it was reasonable for the ALJ to conclude, based on the entire record, that she could perform the limited range of sedentary work that he ultimately assessed. And that was not unreasonable. Certainly there is conflicting evidence in the record, and Ms. Stibbles may have a different interpretation of that evidence. But since the court can't reweigh the evidence, and the ALJ did consider evidence going both ways and made an effort to account for what Dr. Chin assessed, but reasonably found that it was out of proportion to what the evidence as a whole showed for the entire period, that was reasonable. And also I'd just like to point out that there were examples in Dr. Chin's notes after the surgery of improvement, both from Ms. Stibbles herself and from Dr. Chin. The day after the surgery, Ms. Stibbles said that her pain levels had improved and that she was satisfied with the outcome. A month later, she said the headaches had improved. She had only mild pain in her left arm. And then in October, two months later, she said her headaches was much better. Her left arm was still experiencing weakness and numbness, but Dr. Chin himself said that she had a good result from that surgery. That's at page 683 of the record. So the ALJ was entitled to find that the opinion was not entirely supported. Similarly, for consistency, the ALJ also pointed to conflicting findings from various sources in the record, both as to gait and as to the left arm. There were also inconsistencies within the medical opinions. So there's no dispute that she may not have regained full functioning during the relevant period and that she continued to have limitations, but it was still reasonable for the ALJ to find that she was limited, just not quite as limited to the extent that Dr. Chin said she was. And then, I'm running out of time, but I just wanted to say that similarly for the subjective statements, the ALJ also reasonably concluded that she wasn't quite as limited as she said she was. This is detailed at pages 16 to 17 of the ALJ's decision, and it's at pages 38 to 41 of our brief. Just as one example, she told the ALJ that she spent all but 45 minutes of every day lying down, but the ALJ pointed to the fact that the one occasion she saw a pain management doctor, she said she was able to stay mobile and functional by taking Tramadol and only occasionally. And this is just one example of why the ALJ reasonably contrasted her statements to the ALJ with her statements to her treating providers, which is exactly what SSR 16-3P tells the ALJ to do. So, on the whole, this was a reasonable assessment of the record. The ALJ was not required to find her even more limited, and the court should affirm the ALJ's decision. Thank you. We'll hear rebuttal. Thank you. On the issue of Ms. Tittle's credibility in her statements regarding her levels of pain, as noted in our brief, Ms. Tittle's first report of her levels of pain and her levels of limitation are reported on May 20th, just three or four days after her first and second surgery. So her description of her level of pain three or four days after her first and second surgeries is probably accurate, and is very consistent with what Dr. Lorenzen said. The next and only other self-report of Ms. Tittle's to the administration about her levels of pain comes in the January 19th testimony to the ALJ, and this is just 11 days after her January 2019 fusion surgery, where the judge asked her, why are you holding your neck up with your arm? And she explained, if I don't, I have extreme neck pain. So, we believe that she was very credible with respect to where she was at that point, just days post-surgically in 2017 and then again in 2019. For the administrative law judge to claim that she's not credible because this description of her limitation of only being able to be up and around for 45 minutes a day, those are accurate descriptions of her functioning at that time, and it doesn't diminish the fact that her credibility, I should say. And I would point out that there's this issue that Dr. Lee says that her condition continues to improve. Now, Dr. Lee had access to the MRI in 2018, in which the radiologist says, hmm, the surgical fixation plate that should be in the neck is no longer seen and presumably has been removed. And Ms. Tibbles explains in her testimony to the judge in 2019 that there was some problem, that the surgical plate was never put in. What we do know in terms of, if there was to be any improvement, surely it would have had to have been with the full set of surgical hardware, which appears to be missing. Dr. Lee's suggestion that her condition was improving is not well taken when he should have been able to recognize that this was the onset of more problems. And I think my time is up. So with that, I ask your honors to consider the issue of the ALJ's lay interpretation over that of Dr. Chin and do what the court has previously said, is that when faced with similar dilemmas with regards to what the lay observer makes of the evidence, they should seek the opinion either of the reporting doctor, but they could also obtain a medical opinion from one of SSA's medical experts. Thank you, your honors. Thank you both, and we'll take the matter under advisement.